IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MICHELLE D. MCDONALD,

Plaintiff,

v.

Civil Action No. 16-611-RGA

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

## MEMORANDUM ORDER

Plaintiff, Michelle D. McDonald, appeals the decision of Defendant, Nancy A. Berryhill, the Acting Commissioner (the "Commissioner") of the Social Security Administration, which denied Ms. McDonald's application for Social Security disability insurance benefits ("DIB") or Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act. 42 U.S.C. §§ 401-34, 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g), which grants original jurisdiction to the District Courts to review a final decision of the Commissioner.

Presently pending before the Court are cross-motions for summary judgment filed by Ms. McDonald and the Commissioner. (D.I. 9, D.I. 14).

The motions were referred to the United States Magistrate Judge (D.I. 11), who issued a Report and Recommendation recommending that Ms. McDonald's motion be denied, and the

1

Commissioner's motion be granted. (D.I. 17). Ms. McDonald filed objections (D.I. 18) to which the Commissioner has responded. (D.I. 20). I review the objections to the Report and Recommendation *de novo. See Brown v. Astrue,* 649 F.3d 193, 195 (3d Cir. 2011).

Ms. McDonald has requested that the Court reverse the decision of the Commissioner and find her disabled, or in the alternative, remand this matter for further administrative proceedings. (D.I. 18 at 4). For the reasons set forth below, the Court sustains Plaintiff's objection with regards to the credibility of her treating physician and requires that a new hearing be granted consistent with this order.

I. **BACKGROUND**

a. **Procedural History**

Ms. McDonald filed for DIB, and later for SSI, alleging disability beginning on November 15, 2011 due to severe physical ailments, including degenerative disc disease of the cervical spine and carpal tunnel syndrome. (D.I. 7-6 at 382, 384). A hearing was held before an ALJ on September 10, 2014. (*Id.* at 382). The ALJ subsequently found that Ms. McDonald did not qualify as "disabled" under the Act and denied her request for benefits. After the ALJ's denial, Plaintiff requested review by the Social Security Appeals Council, but was denied. She then filed a timely appeal to this Court.

b. **Plaintiff's Medical History, Condition, and Treatment**

At the time of her alleged disability, Ms. McDonald was 46 years old, which is defined as a younger individual under 20 CFR § 404.1563 (c). (D.I. 7-6 at 390). Ms. McDonald has past relevant work as a sales representative and possesses a high school education. (*Id.* at 389-90).

Ms. McDonald's detailed medical history is contained in the record, but the Court will provide a brief summary. On November 15, 2011, McDonald stopped working. She said it

2

was "because of [her] condition(s) [and] other reasons." (D.I. 7-11 at 569). She elaborated: "The main reason was due to lay-off. I'm finding it hard [to] find work as I had limitations. The work I was performing prior to lay-off was worsening my medical conditions." (*Id.*). Since that time, Ms. McDonald has developed increased neck and back pain, worsening arthritic changes in the cervical spine, and worsening carpal tunnel syndrome, for which she has undergone two surgeries on the right hand to date. (D.I. 7-6 at 387-89). Ms. McDonald has also experienced gastrointestinal issues and associated chest pain, which began in November 2013. (D.I. 7-7 at 409). She has also had numerous endoscopies, saw various specialists, and had gallbladder surgery in January 2014. (*Id.*). Ms. McDonald is currently taking Linzess for bowel issues, which forces her to remain close to a bathroom for most of the day. (*Id.* at 410).

Ms. McDonald has been treated by Dr. James Kirkland Beebe, M.D. since November, 2011. (D.I. 7-21 at 1185). Six months after beginning treatment with Dr. Beebe, Ms. McDonald complained of difficulty sleeping and problems related to arthritis in both of her shoulders. (D.I. 7-12 at 692). X-rays of the cervical spine showed significant arthritic changes. (*Id.* at 708). She also complained of increased neck pain on July 2, 2012 and Dr. Beebe diagnosed osteoarthritis of the cervical spine and prescribed Aleve and Tylenol. (*Id.* at 690). In September 2012, she complained of right hand numbness and was diagnosed with right carpal tunnel syndrome. (*Id.* at 750). X-rays of the spine and knees have also shown significant damage in these areas. (*Id.* at 907).

On November 20, 2012, Dr. Beebe completed a Doctor's Certificate for the Delaware Department of Labor, where he diagnosed cervical radiculopathy and bilateral carpal tunnel syndrome, concluding that Ms. McDonald was "disabled from all work indefinitely." (D.I. 7-16 at 928). In an assessment of Ms. McDonald noted in a Multiple Impairment Questionnaire dated

3

July 2, 2013, Dr. Beebe diagnosed "cervical degenerative disc disease, osteoarthritis with bilateral cervical radiculopathy, bilateral carpal tunnel syndrome, and cubital tunnel syndrome." (D.I. 7-19 at 1105) Dr. Beebe estimated that Ms. McDonald's pain varied from moderate to moderately severe (5-8 on a scale of 10) and her level of fatigue was moderately severe (7 on a scale of 10). (*Id.* at 1107). In Dr. Beebe's July opinion, Ms. McDonald could not stand/walk continuously, must stand and move around for a period of 20 minutes each 15-20 minute interval if sitting, could not lift any weight, and could not carry more than five pounds and then only occasionally. (*Id.* at 1108)

Dr. Beebe examined Ms. McDonald again on August 15, 2013 and noted: generalized osteoarthritis, cervical spondylosis without myelopathy, lumbosacral neuritis/radiculitis, and carpal tunnel syndrome. (D.I. 7-20 at 1122). A month later on September 17, 2013, he completed a second Multiple Impairment Questionnaire. (D.I. 7-21 at 1185). In this submission, his opinions were that she could only sit for shorter periods, and that she could not lift more than ten pounds occasionally. (*Id.* at 1187-88).

Dr. Beebe noted "severe pain in the right wrist" on November 5, 2013. (D.I. 7-20 at 1129).

On February 18, 2014, Dr. Beebe wrote a summary to Plaintiff's attorneys, in which he concluded that Ms. McDonald was "disabled by her cervical and lumbar osteoarthritis, degenerative disc disease, bilateral carpal tunnel and bilateral cubital tunnel syndromes [which] have unfortunately not responded to surgical therapy and/or steroid injections. She also failed physical therapy, which she attended for at least eighteen months." (D.I. 7-16 at 962). He added that she was "very unlikely to be able to return to the workforce" because he did not expect her to improve. (*Id.*).

4

### c. ALJ Decision

The ALJ found that Ms. McDonald had the severe impairments of degenerative disc disease of the cervical spine, carpal tunnel syndrome, and asthma. (D.I. 7-6 at 384). The ALJ further found that while Ms. McDonald's impairments did not meet a Listing, they limited her to a reduced range of light work. (*Id.* at 386-87). Therefore, Ms. McDonald could not perform past relevant work, but could perform light work as defined in 20 CFR § 404.1567(b) and 416.967(b), such as working as a final inspector, order caller, or redemption clerk. (*Id.* at 386-90). The ALJ provided "no weight to the opinions provided by Dr. Beebe." (*Id.* at 389). Accordingly, the ALJ concluded that Ms. McDonald was not disabled within the meaning of the Social Security Act. (*Id.* at 391).

## II. LEGAL STANDARD

### a. Standard of Review

As noted, I undertake *de novo* review of the recommendations to which the objections were made. This review requires the Court to re-examine all the relevant evidence in deciding whether to uphold or reverse the Commissioner's decision. The Court must uphold the Commissioner's factual determinations if they are supported by "substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (2d Cir. 2005). As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

5

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour*, 806 F.2d at 1190. The Court's review is limited to the evidence that was actually presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2011). "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Pysher v. Apfel*, 2001 WL 793305, at *3 (E.D. Pa. July 11, 2011).

The Third Circuit has explained that a:

> single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g. evidence offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

*Kent v. Schweiker*, 710 F.2d 110, 143 (3d Cir. 1983). Even if the reviewing Court would have decided the case differently, it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour*, 806 F.2d at 1190-91.

### b. Analysis

Plaintiff makes two arguments in support of her contention that the ALJ's decision should be reconsidered. First, Plaintiff argues that the ALJ failed to properly weigh the medical opinions of her treating physician. (D.I. 18 at 1). Second, Plaintiff argues that the ALJ failed to properly weigh Plaintiff's credibility. (*Id.*).

#### i. *The ALJ Did Not Set Forth Sufficient Reasons to Reject Dr. Beebe's Opinions*

Plaintiff argues that the ALJ failed to properly weigh the medical opinion evidence from the Plaintiff's treating physician. The ALJ gave no weight to Dr. Beebe's opinions for three

6

stated reasons: (1) Plaintiff sat for 45 minutes at the hearing and did not get up and move around (D.I. 7-6 at 389), which was inconsistent with Dr. Beebe's questionnaire responses that Plaintiff had to get up and move around every 15-20 minutes (D.I. 7-19 at 1107) or every 10 minutes (D.I. 7-21 at 1187); (2) Dr. Beebe's medical records do not "indicate[] these extreme limitations or place[] these restrictions on [Plaintiff]; and (3) a recent office visit on June 4, 2014, had indicated "normal ambulation and normal motor strength and tone." (D.I. 7-6 at 389, citing D.I. 7-22 at 1212).

An ALJ "may not reject [a physician's findings] unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cr. 1993). Further, the ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation, or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000)(citing multiple Third Circuit cases). In *Morales*, the Court noted that "an ALJ may consider his own observations of the claimant and [the Court] cannot second-guess the ALJ's credibility judgments, [but] they alone do not carry the day and override the medical opinion of a treating physician that is supported by the record." *Id.* at 318. Plaintiff objects to the ALJ rejecting credible medical evidence on the basis of observation during a hearing, and argues that the Third Circuit has rejected the so called "sit and squirm" test to determine credibility. *See Van Horn v. Schweiker*, 717 F.2d 871, 874 (3d Cir. 1983). I note that *Van Horn* is a more extreme case, in that the ALJ was evaluating the claimant's mental state, that is, acting as a psychiatrist.

Here, the ALJ explained why he rejected Dr. Beebe's opinions. So let's look at the reasons given.

7

As to the first reason, the ALJ's observations of Plaintiff cannot form the basis for rejecting Dr. Beebe's opinions. The ALJ's observations are not medical evidence. Further, what the ALJ sees at a 45 minute hearing does not actually contradict the opinions that Dr. Beebe gave in the "Multiple Impairment Questionnaires." The ALJ saw the behavior of a litigant sitting in front of a judge for a single 45 minute session. Dr. Beebe was asked to opine on Plaintiff's limitations "in a normal COMPETITIVE FIVE DAY A WEEK WORK ENVIRONMENT ON A SUSTAINED BASIS [with] an eight-hour day." (*E.g.*, D.I. 7-19 at 1107 (emphasis in original)). In that context, he was asked, "Would it be necessary or medically recommended for your patient not to sit continuously in a work setting," to which he answered, "Yes." The question the ALJ found to be inconsistent with Plaintiff's behavior at the hearing then followed: "How frequently must your patient get up and move around?" It is not, "Could your patient one-off sit for 45 minutes without getting up?" It is not even close to that. *See Brownawell v. Comm'r*, 554 F.3d 352, 356 (3d Cir. 2008) (noting that examination assessment and workplace setting assessment are different). The ALJ's observations provided no weight for the ALJ's decision to reject Dr. Beebe's opinions outright.

As to the second reason, the absence of description of workplace limitations in medical records is not a basis to reject a treating physician's opinions. The Third Circuit "has admonished ALJs who have used such reasoning, noting the distinction between a doctor's notes for purposes of treatment and that doctor's ultimate opinion on the claimant's ability to work." *Id.* The second reason is therefore insufficient.

As to the third reason, unlike the first two, it is based on medical evidence. Let's consider the context. Plaintiff claims disability since November 2011. Dr. Beebe's "Multiple Impairment Questionnaires" are dated July 2, 2013 (D.I. 7-19 at 1110) and September 17, 2013

8

(D.I. 7-21 at 1192). The "contradictory medical evidence" is an office visit on June 4, 2014. Plaintiff's hearing was on September 10, 2014. The June 4 office visit described "normal ambulation and motor strength." Dr. Beebe's opinions were that Plaintiff suffered from cervical degenerative disc disease with radiculopathy and bilateral carpal tunnel syndrome. His questionnaires generally describe numbness and pain in her hands, wrists, and neck. It does not appear to be the case that he has ever said that she had anything other than normal ambulation. There is nothing which suggests that ability or inability to walk was relevant to Dr. Beebe's opinions. Further, the Commissioner cites nothing as to why "normal motor strength" is inconsistent with Dr. Beebe's opinions about pain and accompanying limitations arising from degenerative disc disease and the effects of carpal tunnel syndrome.

In her response to the objections (D.I. 20) and in the underlying briefing (D.I. 15 pp. 10-12), Defendant did not completely abandon the ALJ's stated reasons for rejecting Dr. Beebe's opinions, although neither did Defendant do much more than repeat them. Rather, Defendant primarily argued that his opinions were "unsupported by medical findings and inconsistent with the record as a whole." (D.I. 20 at 2; D.I. 15, p.12). I note that most of the cited evidence is Plaintiff's activities of daily living, with some reference to the opinions of the state agency doctors. As to the former, it is not medical evidence; as to the latter, I do not express any opinion what weight such evidence should be given in deciding whether to reject Dr. Beebe's opinions. Explaining the reasons for rejecting Dr. Beebe's opinions is something that, in the first instance, the ALJ must do. The ALJ decided to reject the opinions for improper reasons and/or irrelevant reasons; the Commissioner cannot now justify the ALJ's action based on reasons on which the ALJ did not rely.

9

I do not think that the ALJ has cited any reasons that are legally permissible or based on substantial evidence for rejecting Dr. Beebe's opinions outright. Thus, it will be necessary to remand this case to the Commissioner for further proceedings consistent with this Memorandum Order.

ii. *The ALJ Properly Evaluated Plaintiff's Credibility*

Plaintiff asserts that the ALJ erred in failing to properly evaluate her credibility. (D.I. 18 at 3). "An ALJ must give great weight to a claimant's subjective testimony of the inability to perform even light or sedentary work when this testimony is supported by competent medical evidence." *Shaudeck v. Com'r.,* 181 F.3d 429, 433 (3d Cir. 1999). When making credibility findings, the ALJ must indicate which evidence he rejects and which he relies upon as the basis for his findings. *See id.* The ALJ's decision need only be specific enough to allow a reviewing court to determine the weight given to the claimant's statements and the reasons for the weight. *See id.*

Here, after evaluating the evidence, the ALJ determined that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms. (D.I. 7-6 at 388). However, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of these symptoms were not credible for reasons explained in his decision. (*Id.*). Courts ordinarily defer to an ALJ's credibility judgments so long as they are supported by substantial evidence. *See Brank v. Astrue,* 636 F.Supp.2d 335, 344 (D.Del 2009).

The ALJ explained the reasons for his determination. (D.I. 7-6 at 388-89). Other than the reference to Plaintiff not getting up and moving around at the hearing as "undermin[ing] her entire testimony on the severity of her impairments," the ALJ's stated reasons provide a basis for

10

his conclusion. That is sufficient. Since the case is going to be remanded in any event, the ALJ should reconsider Plaintiff's credibility without relying upon her physical actions or inactions at the hearing.

### III. CONCLUSION

For the reasons discussed above, the Report and Recommendation (D.I. 17) is **ADOPTED** in part and **REJECTED** in part. Plaintiff's motion for summary judgment (D.I. 9) is **GRANTED**; Defendant's motion for summary judgment (D.I. 14) is **DENIED**. The case is **REMANDED** to the Commissioner for further consideration consistent with this Memorandum Order.

Entered this __1__ day of September 2017.

                                                    Richard G. Andrews
                                                  United States District Judge